**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

L. BRET K.,[1]                                     )
                                                    )
    *Plaintiff*,                           )
                                                    )
       v.                     )          Civil No. 3:23-cv-00821-SLS
                                                    )
LELAND DUDEK,[2]                                    )
Acting Commissioner of Social Security,             )
                                                    )
    *Defendant*.                          )
_____            )

## <u>MEMORANDUM OPINION</u>

In this action, Plaintiff L. Bret K. seeks review of the Commissioner of the Social Security

Administration's ("SSA") decision to deny his Title II application for disability insurance benefits.

This matter comes before the Court on cross-motions for summary judgment, which have been

fully briefed, making this matter ripe for review. (ECF Nos. 13, 14, 17.) The Court exercises

jurisdiction with the consent of the parties pursuant to 28 U.S.C. § 636(c)(1) (ECF Nos. 3, 18, 19)

and pursuant to 42 U.S.C. § 405(g).

Plaintiff moves the Court to reverse the Commissioner's decision denying him social

security benefits and remand for a *de novo* hearing and new decision. (Plaintiff's Memorandum

of Law in Support of a Motion for Summary Judgment (ECF No. 14) ("Pl.'s Mem.") at 19 .) As

the basis for such relief, Plaintiff argues that the Administrative Law Judge's ("ALJ") residual

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that federal courts refer to claimants by their first names and last initials in social security cases.

[2] Leland Dudek became the Acting Commissioner of Social Security in February 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he has been substituted for the former Commissioner as Defendant in this action. No further action need be taken. 42 U.S.C. § 405(g).

functional capacity ("RFC") determination is not supported by substantial evidence because he: (1) erred in evaluating Plaintiff's subjective complaints; and (2) improperly evaluated the medical opinions of Philip Hatfield, Ph.D. ("Dr. Hatfield") and Geunjae Lee, PMHNP ("PMHNP Lee"). (Pl.'s Mem. at 11-18.)

In response, the Commissioner argues that the ALJ properly considered and analyzed Plaintiff's subjective complaints as well as Dr. Hatfield and PMHNP Lee's medical opinions in accordance with the regulations. (Defendant's Motion for Summary Judgment and Brief in Support Thereof (ECF No. 17) ("Def.'s Br.") at 22-30.) Therefore, the Commissioner asks the Court to affirm the decision. (Def.'s Br. at 30.)

For the reasons set forth below, the Court finds that the ALJ's consideration of Plaintiff's subjective complaints and the medical opinion evidence comports with applicable legal standards and that substantial evidence supports the ALJ's RFC determination. Therefore, the Court will DENY Plaintiff's Motion for Summary Judgment (ECF No. 13), GRANT the Commissioner's Motion for Summary Judgment (ECF No. 17), and AFFIRM the final decision of the Commissioner.

## I.    PROCEDURAL HISTORY

On July 22, 2021, Plaintiff filed a Title II application for disability insurance benefits, alleging disability beginning on February 16, 2021. (Administrative Record ("R.") at 85.)[3] In his application, Plaintiff alleged that he suffered from a back injury, migraines, sleep apnea, Post-Traumatic Stress Disorder ("PTSD"), cognitive difficulties, and anxiety. (R. at 73.) The SSA

---

[3] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers from this Memorandum Opinion. The Court will further restrict its discussion of Plaintiff's medical information to the extent necessary to result in a proper analysis of the case.

denied Plaintiff's claims initially and again upon reconsideration.  (R. at 104, 110.)  Plaintiff requested a hearing before an ALJ, and one was held on June 1, 2023.  (R. at 42-72, 114-15.)

On July 10, 2023, the ALJ issued a written decision, finding Plaintiff not disabled under the Social Security Act ("the Act").  (R. at 17-34.)  On October 25, 2023, the SSA Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (R. at 1-3.)  Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II.    STANDARD OF REVIEW

The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual has a disability "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." *Id.* § 423(d)(2)(A).

SSA regulations set forth a five-step process to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); *see Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation).  At step one, the ALJ reviews the claimant's current work activity to determine if he or she has been participating in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i).  At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements.  *Id.* § 404.1520(a)(4)(ii).  At step three, the ALJ determines whether the medical impairments meet or equal an impairment listed in the regulations.  *Id.* § 404.1520(a)(4)(iii).  Between steps three and four, the ALJ determines the

3

claimant's RFC, which accounts for the most that the claimant can do despite his or her impairments. *Id.* § 404.1545(a).

At step four, the ALJ assesses whether the claimant can perform his or her past employment given his or her RFC. *Id.* § 404.1520(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, and the claimant must prove that his or her limitations preclude the claimant from performing his or her past relevant work. *See Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). If such past work can be performed, then benefits will not be awarded, and the analysis ends. *See* 20 C.F.R. § 404.1520(e). However, if the claimant cannot perform his or her past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant can perform other work that is available in the national economy. *See id.* § 404.1520(a)(4)(v). The Commissioner usually offers this evidence through the testimony of a vocational expert. *See Mascio*, 780 F.3d at 635.

In reviewing a decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Id.* at 634 (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *See Hancock*, 667 F.3d at 472; *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The substantial evidence standard "presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts." *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). Thus, a decision by the Commissioner is not subject to reversal merely because substantial evidence would have supported a different conclusion. *Id.*

To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)); *see Craig*, 76 F.3d at 589. The Court must consider the support for the Commissioner's decision and "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). If a fact is supported by substantial evidence, the reviewing court must affirm, regardless of whether the court agrees with such findings. *Hancock*, 667 F.3d at 476 (citing *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)). If the Commissioner's findings are arbitrary or unjustified, then they are not supported by substantial evidence, and the reviewing court must reverse the decision. *See Breeden*, 493 F.2d at 1007.

### III.    THE ALJ'S DECISION

The ALJ analyzed Plaintiff's disability claim under the five-step evaluation process. (R. at 17-34); *see* 20 C.F.R. § 404.1520(a)(4); *Mascio*, 780 F.3d at 634. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since February 16, 2021 (the alleged onset date). (R. at 19.) At step two, the ALJ found that Plaintiff suffered from the severe impairments of traumatic brain injury with mild neurocognitive disorder, injury requiring pelvic fusion surgery, spine disorder and history of lumbar fusion 20-plus years ago, major depressive disorder, PTSD, headache disorder (migraine and cervicogenic headaches), onset of inflammatory arthritis due to Lyme disease, myofascial pain disorder, obstructive sleep apnea, and moderate obesity. (R. at 19.)[4]

_____

[4] In addition, the ALJ acknowledged Plaintiff's left shoulder separation impairment. (R. at 20.) The ALJ noted that Plaintiff had a separation of the left shoulder in 2018 but "the subsequent

At step three, the ALJ concluded that Plaintiff did not have an impairment, individually or in combination, which met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 20-22.)

The ALJ then determined Plaintiff's RFC.  (R. at 21.)  Based on the record, the ALJ found that Plaintiff retained the ability to perform light work as defined by 20 C.F.R. § 404.1567(b) with the following limitations:

> [Plaintiff] can sit two to four hours with ordinary breaks an employer typically provides; cannot be exposed to hazards; can frequently but not constantly reach bilaterally; has a level of concentration, persistence, and maintaining pace and a cognitive level adequate to perform simple, routine (non-complex) tasks and follow short, simple (non-complex) work instructions; can only occasionally interact with others (the public, co-workers, and supervisors); is limited to a work environment with routine work changes and situations; and will be off-task less than 10 percent of the day and may be absent one day a month.

(R. at 22.)

In arriving at the RFC, the ALJ first summarized Plaintiff's subjective complaints.  (R. at 23.)  Plaintiff reported that his impairments stemmed from a July 2018 accident where he was struck by a motor vehicle while biking.  (R. at 23.)  Plaintiff complained of "pain throughout" that was worse in his lower back.  (R. at 23.)  He stated that he can stand and sit for 30 minutes, lift 20 pounds repeatedly, and reach overhead without any weight due to pain in his left shoulder.  (R. at 23.)  Plaintiff stated he found walking therapeutic and would frequently walk at least a mile and a half.  (R. at 23.)  He further testified that he had trouble remembering verbal instructions and needed reminders to take medications and shower.  (R. at 23.)  Plaintiff reported frequent two- to three-hour headaches and migraines that required him to remain in a dark room twice a week.  (R.

---

record shows little regarding his shoulder," including an April 2023 disability assessment showing he had full range of motion in his shoulders.  (R. at 20.)  Regardless, in the RFC assessment, the ALJ included a limitation on reaching as a precaution to accommodate that non-severe impairment. (R. at 20.)

at 23.)  Plaintiff also reported having 30-minute panic attacks once a month and being in a constant state of fear.  (R. at 23.)  He further described his ability to focus as "fine" unless he is in pain or receives criticism from others.  (R. at 23.)

Next, in a portion of the decision spanning over six pages, the ALJ summarized Plaintiff's medical records pertaining to his mental and physical impairments.  (R. at 23-29.)  As relevant to the assignments of error raised in this appeal, Plaintiff generally reported mood issues, but the medical record showed improvement in those issues with time and medication.  (R. at 25-27.)  Treatment providers noted that Plaintiff displayed signs of depression, ranging from mild to severe, but also generally exhibited normal concentration, memory, mood, and affect.  (R. at 26-28.)  While Plaintiff also complained of debilitating headaches and migraines, the record showed relief with medication, and Plaintiff did not seek additional, more intensive treatments.  (R. at 26-27.)  In addition, imaging showed disc herniations and bulges, and Plaintiff had a reduced range of motion in his spine and reported pain.  (R. at 23-24, 27.)  However, Plaintiff also consistently reported being able to perform activities of daily living, as well as recreational activities, including traveling, training for triathlons, running, biking, and swimming.  (R. at 23-24, 26-27.)

After considering the record evidence, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely consistent with the record evidence.  (R. at 29.)  The ALJ then highlighted portions of the medical evidence, pulled from his prior lengthy summary, which he found inconsistent with Plaintiff's allegations.  (R. at 31-33.)

Regarding Plaintiff's physical impairments, the ALJ explained that although Plaintiff complained of ongoing pain since the July 2018 accident, the record showed that Plaintiff had recovered to the point where he engaged in high exertional activities after the accident.  (R. at 29.)

The ALJ emphasized that Plaintiff reported walking seven miles in December 2018, five months after the accident, and progressing in his ability to run, bike, and swim in January 2019. (R. at 29.) Plaintiff continued walking and hiking during the alleged period of disability at issue in this appeal. (R. at 23, 27.) Plaintiff also did not contend that he stopped working due to back pain. (R. at 29, 32.)

In addition, the ALJ found Plaintiff's recreational activities and rationale for leaving his employment inconsistent with his complaints of debilitating headaches. (R. at 30.) The ALJ acknowledged Plaintiff's headache issues but concluded that the record undermined the level of intensity he assigned to them. (R. at 30.) Plaintiff's ability to travel and hike suggested that "he was not experiencing such intense headache issues" at those times. (R. at 30.)

The ALJ also concluded that the treatment notes did not support the alleged severity of his impairments. (R. at 31-33.) For instance, the ALJ noted Plaintiff's complaints of debilitating headaches but found he did not generally report headaches to treatment providers, his migraines improved with medication, and he did not seek additional treatment despite his treatment providers' recommendations. (R. at 30.) Plaintiff also stated he experienced a traumatic brain injury from the July 2018 accident, however; the ALJ found the medical record did not "clearly indicate" that and did not document intense cognitive issues. (R. at 30.) The ALJ emphasized 2018 imaging showing no intracranial injury and the consultative examiner's report finding no manifestations of traumatic brain injury. (R. at 30.)

Regarding Plaintiff's mental impairments, the ALJ found that Plaintiff's allegations of panic attacks and aversion to criticism were belied by the record, which did not generally show anxiety, behavioral abnormalities, or panic issues. (R. at 32.) The ALJ reviewed evidence showing that Plaintiff lost a bank job due to a math mistake; calculated math problems slowly, although he

got most of them correct; left a teaching job due to irritability in dealing with others; struggled with criticism; experienced mood issues; had difficulty following instructions; and needed reminders to complete tasks.  (R. at 21.)  But the ALJ also considered evidence showing that Plaintiff did not have significant cognitive, concentration, or memory abnormalities; did not consistently complain about social anxiety; appeared well-dressed, groomed, and with good hygiene; managed his symptoms with medication and treatment; was capable of traveling; counseled friends on financial issues; and followed the news and stocks.  (R. at 21.)  To accommodate Plaintiff's mental impairments, the ALJ limited Plaintiff to simple, routine tasks and short, simple instructions, occasional interaction with others, and a routine work environment.  (R. at 21.)

The ALJ also considered the medical opinions and prior administrative medical findings, including those relating to Plaintiff's mental impairments.  (R. at 31-33.)  The ALJ considered two assessments prepared by PMHNP Lee and found them unpersuasive, explaining that they were internally inconsistent with PMHNP Lee's own records and that the larger record did not support the severe mental limitations included in his assessments.  (R. at 31-32.)  The ALJ also considered the medical opinion of Dr. Hatfield, who examined Plaintiff and prepared a psychological consultative report in December 2021.  (R. at 32.)  The ALJ found that Dr. Hatfield provided limited support for his opinion and that the record, and Dr. Hatfield's own report, conflicted with his opinion.  (R. at 32.)  Therefore, the ALJ found Dr. Hatfield's opinion "not persuasive."  (R. at 32.)

The ALJ also considered the medical opinions of state agency examiners.  (R. at 32-33.)  The state agency examiners opined that Plaintiff should avoid direct contact with the public because he appeared anxious at examinations; reported difficulty socializing, understanding and

concentrating; and had moderate limitations in interacting with others and concentrating, persisting, or maintaining pace. (R. at 32.) The state agency examiners further found that Plaintiff was capable of simple routine tasks. (R. at 32.) Based on a review of these opinions and the record as a whole, the ALJ found these opinions partially persuasive. (R. at 32-33.) Specifically, the ALJ was unpersuaded that Plaintiff's limitations required him to avoid direct contact with the public. (R. at 32-33.) The ALJ explained that while Plaintiff appeared anxious at one consultative examination, treatment and counseling records otherwise showed he had a normal affect and euthymic mood. (R. at 32-33.) Those same records did not "indicate intense social anxiety or anger issues." (R. at 33.) Instead, Plaintiff admitted that he was "hoping to meet people." (R. at 33.) Thus, the ALJ concluded that "[Plaintiff] would be able to occasionally interact with the public" and that the record did not support the more severe limitations identified by the state agency examiners. (R. at 33.)

At step four, the ALJ found that Plaintiff could not perform his past relevant work considering his RFC. (R. at 33.) The ALJ then determined Plaintiff's vocational factors, including that he had at least a high school education and met the definition of a younger individual at the alleged onset date. (R. at 33.) At step five, the ALJ concluded that Plaintiff could perform jobs that exist in significant numbers in the national economy considering his vocational factors and RFC. (R. at 33-34.) Therefore, the ALJ found Plaintiff not disabled from February 16, 2021 (the alleged onset date) through July 10, 2023 (the date of the decision). (R. at 34.)

## IV.    ANALYSIS

Plaintiff raises two challenges to the ALJ's decision. The Court addresses each argument below and finds no reversible error.

A. **The ALJ Applied Correct Legal Standards in Evaluating Plaintiff's Subjective Complaints, and Substantial Evidence Supports the ALJ's RFC Determination**

First, Plaintiff argues that the ALJ erred in evaluating his subjective complaints. (Pl.'s Mem. at 14-18.) Specifically, Plaintiff argues that the ALJ "cherry-picked" the medical evidence to highlight his "good moments." (Pl.'s Mem. at 16.) Contrary to Plaintiff's argument, the ALJ evaluated Plaintiff's subjective complaints as required by applicable legal standards and did not selectively consider the record evidence. Substantial evidence supports the ALJ's RFC determination.

### 1. Standard for Evaluating Subjective Complaints

The regulations provide a two-step process for evaluating Plaintiff's subjective complaints. 20 C.F.R. § 404.1529; *see also* SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). First, the ALJ must determine "whether objective medical evidence presents a 'medically determinable impairment' that could reasonably be expected to produce the claimant's alleged symptoms." *Arakas v. Comm'r of Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020) (citing 20 C.F.R. § 404.1529(b); SSR 16-3p). Second, "after finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled." *Id.* The ALJ must consider all available evidence in this determination, including objective medical evidence, an individual's statements about the intensity, persistence, and limiting effects of the symptoms, and medical opinions and statements from others. *Id.* The claimant does not need to produce objective evidence to satisfy this second prong. *Id.*

### 2. The ALJ Properly Evaluated Plaintiff's Subjective Complaints

Here, the ALJ followed the two-step process in considering Plaintiff's subjective complaints. At the first step, the ALJ found that Plaintiff's medically determinable impairments

could lead to the alleged symptoms.  (R. at 29.)  At the second step, and "[a]fter careful consideration of the evidence," the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the ALJ's] decision."  (R. at 29.)  While Plaintiff contends that the ALJ failed to comply with his obligations under the second step by "simply cherrypick[ing] facts" from the record (Pl.'s Mem. at 16 (citation omitted)), the ALJ's decision shows otherwise.

The ALJ acknowledged treatment and medical findings justifying significant functional limitations.  (R. at 22-33.)  Indeed, the ALJ found that Plaintiff's symptoms associated with his mental and physical impairments limited him to light work with additional restrictions, including limiting Plaintiff to performing simple, routine tasks; following short, simple work instructions; occasional interactions with others; and a work environment with routine changes and situations. (R. at 22.)  The ALJ then provided multiple reasons for rejecting Plaintiff's contention that his subjective complaints justified more severe limitations.  (R. at 29.)

First, the ALJ considered inconsistencies between Plaintiff's subjective complaints of pain and his daily activities.  (R. at 29.)  The ALJ acknowledged that examination findings showed spinal and pelvic fractures following the 2018 accident, as well as ongoing mild stenosis in the cervical spine and mild compression of the lumbar spine.  (R. at 29-30.)  The ALJ also considered records showing that Plaintiff experienced tenderness and spasms in the back, a positive straight leg raise on the right side, and limited ranges of motion in the spine.  (R. at 27-30.)  But based on a review of the entire record, the ALJ found Plaintiff's complaints of "pain throughout his body . . . , particularly in his back," inconsistent with his daily and recreational activities, including hiking, swimming, and biking, which proved him capable of high exertional activities.  (R. at 29.)

The ALJ reasonably concluded that Plaintiff's ability to engage in these activities undermined his subjective reports of disabling generalized pain throughout his body.  (R. at 29.)  Instead, the ALJ concluded that Plaintiff could perform light level work with an additional reduced sitting limitation, even considering his "standing/walking and lifting/carrying abilities" as well as "his back/pelvic and generalized issues."  (R. at 29.)

Second, the ALJ found Plaintiff's daily activities and the medical record inconsistent with his subjective reports of disabling migraine symptoms.  (R. at 30.)  The ALJ acknowledged that the record showed headache issues.  (R. at 30.)  However, the ALJ found that Plaintiff's daily activities, including his travel and multi-day hiking trips, indicated that his migraines were not so intense as to force him into a dark room twice a week.  (R. at 30.)  The medical evidence also showed that Plaintiff's migraines were generally controlled with medication.  (R. at 30.)  While Plaintiff's treatment provider outlined additional treatments, including trigger point injections and occipital nerve blocks, in January 2022, there is no evidence that Plaintiff received these additional, more intensive treatments for his migraines.  (R. at 30.)  Instead, the record showed that Plaintiff complained of migraines less frequently after January 2022.  (R. at 27, 30.)  Nevertheless, the ALJ accounted for Plaintiff's headache issues by incorporating a limitation to simple tasks and a prohibition on exposure to hazards in the RFC.  (R. at 22, 30.)

Third, the ALJ acknowledged Plaintiff's statements about symptoms from his traumatic brain injury, including his reports about freezing mid-sentence.  (R. at 30.)  The ALJ, however, found that the record did not "clearly indicate" a traumatic brain injury given imaging, the lack of intense cognitive issues, and the consultative examiner's report finding no manifestations of traumatic brain injury.  (R. at 30.)  While Plaintiff labels this conclusion legal error (Pl.'s Mem. at 14), it finds substantial support in the record.  In any event, the ALJ found it appropriate to limit

Plaintiff to simple, routine tasks and short, simple instructions to accommodate symptoms relating to his traumatic brain injury.  (R. at 22, 30.)

Fourth, the ALJ acknowledged Plaintiff's reports that he had difficulty following instructions, needed reminders to take medicine or shower, experienced panic attacks or fear, and struggled with focusing and receiving criticism.  (R. at 23.)  At the same time, the ALJ noted that examination notes generally did not indicate cognitive, memory, or concentration issues or document intense mood abnormalities.  (R. at 32.)  Moreover, Plaintiff could care for his personal needs, travel and backpack, provide financial counseling to friends, and follow financial and general news.  (R. at 21, 25.)  Considering Plaintiff's subjective reports alongside the medical evidence, his statements to treating providers, and his activities, the ALJ found Plaintiff capable of light work with additional restrictions, including performing "simple, routine (non-complex) tasks and follow[ing] short, simple (non-complex) work instructions," occasional interaction with others, and a work environment with routine work changes and situations.  (R. at 22.)  That decision finds substantial evidentiary support, and the ALJ sufficiently explained why the record evidence did not justify further limitations in the RFC.

The ALJ applied the correct legal standards and reasonably concluded, based on the evidence, that Plaintiff's statements about the intensity and persistence of his symptoms were not entirely consistent with the other evidence in the record.  Substantial evidence supports the ALJ's decision, and the Court declines Plaintiff's invitation to reweigh the evidence.  *See Hancock*, 667 F.3d at 472, 476.

   **B.  The ALJ Applied Correct Legal Standards in Evaluating Dr. Hatfield and PMHNP Lee's Medical Opinions, and Substantial Evidence Supports the ALJ's Findings**

Next, Plaintiff argues that the ALJ failed to properly consider the medical opinions of Dr. Hatfield, a psychological consultative examiner, and PMHNP Lee, Plaintiff's mental health

provider, in accordance with applicable regulations.  (Pl.'s Mem. at 11-14.)  The Court finds otherwise.  As discussed below, the ALJ adequately explained why he found those opinions unpersuasive given their lack of support and inconsistency with record evidence, and substantial evidence supports the ALJ's findings.

### 1.  Applicable Regulations for Evaluating Medical Opinion Evidence

Under applicable regulations,[5] the ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources without deferring or giving any specific evidentiary weight to any medical source.   20 C.F.R. § 404.1520c(a).  Specifically, the ALJ must articulate the "persuasiveness" of all medical opinions by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict the medical opinion[,]" including familiarity with the other evidence or understanding of disability program policies and requirements.  *Id.* § 404.1520c.  Supportability and consistency are the "most important" factors, and the ALJ must discuss how these factors were considered in the written decision.[6]  *Id.*

---

[5]  Claims involving medical opinion evidence filed on or after March 27, 2017, are evaluated using a revised regulatory framework.  20 C.F.R. § 404.1520c.; (*see also* Pl.'s Mem. at 9-11; Def.'s Br. at 23-24).

[6] The regulations define supportability and consistency as follows:

(1) *Supportability*.  The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) *Consistency*.  The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

*Id.* § 404.1520c(c)(1)-(2).

§ 404.1520c(b)(2). The ALJ may, but is not required to, explain how the other factors were considered.[7]  *Id.* § 404.1520c(b)(2).

### 2.  *PMHNP Lee's Opinions and the ALJ's Assessment*

PMHNP Lee began treating Plaintiff in July 2021 and provided two mental capacity assessments dated August 3, 2021 and April 6, 2023. (R. at 1725-27; 2436-38.)

In the first assessment, PMHNP Lee checked the boxes indicating Plaintiff had slight limitations in his ability to carry out written instructions, perform activities within a schedule, maintain regular attendance, interact appropriately with the general public, ask simple questions or request assistance, and maintain socially appropriate behavior. (R. at 1725-26.) Next, he found Plaintiff moderately limited in his ability to carry out short, simple instructions; make simple work-related decisions; and set realistic goals. (R. at 1725-26.) PMHNP Lee further opined that Plaintiff had marked limitations in his ability to maintain attention and concentration for extended periods, perform at a consistent pace with "a one hour lunch break and two 15 minute rest periods," and get along with coworkers and peers. (R. at 1725-26.) PMHNP Lee also found Plaintiff extremely limited in his ability to follow verbal instructions, sustain an ordinary routine without special supervision, work in coordination with others without being distracted, "complete a normal work week without interruptions from psychologically based symptoms," accept instructions and criticism from supervisors, and "respond appropriately to changes in the work setting." (R. at 1725-26.) PMHNP Lee indicated Plaintiff would need at least four absences from work per month. (R. at 1725.) Lastly, PMHNP Lee listed Plaintiff's conditions as "PTSD/mood disorder" and noted

---

[7] Additionally, the "ALJ need not necessarily use the words 'supportability' or 'consistency,' as long as the ALJ still performs the requisite analysis of these factors." *Todd A. v. Kijakazi*, No. 3:20-cv-594, 2021 WL 5348668, at *4 (E.D. Va. Nov. 16, 2021).

the presence of impairments since Fall 2020 (which predates the treating relationship).  (R. at 1725-27.)

The second assessment contained nearly identical findings.  (*Compare* R. at 2436-38 *with* R. at 1725-27.)  Indeed, it changed only the limitation in Plaintiff's ability to ask simple questions or request assistance from slight to moderate.  (R. at 2437; *see also* R. at 1726.)

After summarizing PMHNP Lee's assessments, the ALJ found them "not persuasive."  (R. at 32.)  The ALJ explained that the severe limitations within the assessments found no support in the treating provider's own records and were inconsistent with the record evidence.  (R. at 32.)  Although the ALJ acknowledged Plaintiff's testimony about panic attacks, he stated those occurred "only once a month, though he indicated they would be more frequent if he was working."  (R. at 32.)  The provider's notes generally did not document Plaintiff's anxiety, and the record did not attribute Plaintiff's decision to cease working to anxiety.  (R. at 32.)  Records also generally showed that Plaintiff exhibited a normal euthymic mood and that "mood issues . . . improved with medication."  (R. at 32.)  In addition, the psychological report did not note any significant memory abnormality.  (R. at 32.)  Instead, Plaintiff "reported he still counseled friends on finances and would follow stocks and the news, indicating at least basic cognitive functioning."  (R. at 32.)  Although Plaintiff suffered from depression, "he also indicated lack of motivation when he was not doing something extraordinary such as extreme athletic events."  (R. at 32.)  During the period at issue, Plaintiff retained the ability to travel and go backpacking, thus indicating an ability to perform simple tasks.  (R. at 32.)  Based on this evidence, the ALJ found Plaintiff not nearly as limited as opined by PMHNP Lee's assessments.  (R. at 32.)[8]

---

[8] Plaintiff contends that the ALJ ignored critical facts in considering the opinion evidence, including that he participated in extreme triathlons before the July 2018 accident, lack of

The ALJ's analysis and decision builds a logical bridge between the evidence he considered and his conclusion that the level of limitations opined by PMHNP Lee were unsupported and inconsistent with the record.[9]    Regarding supportability, the ALJ found PMHNP Lee's opinions unsupported because he failed to provide further explanation for the checkbox selections[10] and his

---

motivation as a symptom of depression, Plaintiff lost two jobs due to his concentration impairments, and he received consistent psychiatric and psychotherapy treatment. (Pl.'s Mem. at 13.)  However, "even if the allegedly contradictory evidence Plaintiff highlights could support a different result, the court's role is not to second-guess the ALJ's findings." *Jaworski R. v. Kijakazi*, No. 3:20-cv-797, 2022 WL 203749, at *6 (E.D. Va. Jan. 6, 2022) (citation omitted), *report and recommendation adopted*, 2022 WL 200364 (E.D. Va. Jan. 21, 2022).  Indeed, to the extent Plaintiff takes a different view of the evidence, the Court cannot reweigh conflicting evidence or substitute its judgment for that of the ALJ.  *See Hancock*, 667 F.3d at 472; *Dunn*, 607 F. App'x at 274.  In any event, the ALJ did consider this evidence, although perhaps he did not draw the inferences or conclusions Plaintiff wanted.  Plaintiff has failed to explain or otherwise show that the ALJ committed legal error by "ignor[ing] [these] critical facts" and instead invites the Court to reweigh the evidence in his favor, which the Court is not permitted to do.  (Pl.'s Mem. at 13.)

[9] Plaintiff's argument regarding supportability appears to misunderstand that factor.  He argues that evidence outside of PMHNP Lee and Dr. Hatfield's own records – including Plaintiff's catastrophic injuries from the July 2018 accident, extensive physical and mental treatment, loss of jobs, and consistent reporting of symptoms – support their medical opinions.  (Pl.'s Mem. at 14.)  However, "[s]upportability assesses whether the medical source supported the opinion with 'objective medical evidence and supporting explanations.'" *Joan S. v. Kijakazi*, No. 2:21-cv-517, 2022 WL 19561147, at *8 (E.D. Va. Nov. 18, 2022) (citing 20 C.F.R. § 404.1520c(c)(1)), *report and recommendation adopted*, 2023 WL 2626074 (E.D. Va. Mar. 24, 2023).  Thus, the proper analysis of an opinion's sustainability requires consideration of the medical source's own records and provided explanations, not the record as a whole.  *See Valentine v. O'Malley*, No. 4:24-cv-00141, 2024 WL 4445255, at *5 (D.S.C. Sept. 12, 2024) ("[T]he ALJ should perform both the external facing inquiry factor–consistency, looking at evidence other than the opining doctor's evidence and perform the internal facing inquiry–supportability, looking at the opining doctor's own records."), *report and recommendation adopted*, 2024 WL 4444859 (D.S.C. Oct. 8, 2024).

[10] While the ALJ properly did not disregard the assessments solely due to their form, courts within the Fourth Circuit have acknowledged that checkbox forms are usually unhelpful because they "fail to provide an explanation for the conclusions they contain and often fail to account for changes in limitations based on other factors like, for example, if a patient is taking a medication." *Shayna R. v. Kijakazi*, No. 21-1803-BAH, 2022 WL 1239876, at *3 (D. Md. Apr. 27, 2022) (citing *Kirby v. Kijakazi*, No. 3:21-cv-235, 2022 WL 893102, at *6 (W.D.N.C. Mar. 25, 2022) ("Pre-printed check-the-box forms are notoriously deficient.")); *see also Langston v. Comm'r of SSA*, No. 22-1257, 2023 WL 1519521, at *2 (4th Cir. Feb. 3, 2023) (quoting *Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012) ("[A] conclusory checkbox form has little evidentiary value when it cites no medical evidence, and provides little to no elaboration.")); *Vennings v. Comm'r Soc. Sec.*,

own treatment notes conflicted with those selections.  (R. at 32.)  Regarding consistency, the ALJ cited substantial record evidence showing that Plaintiff's impairments were not as limiting as opined by PMHNP Lee.  (R. at 31-32.)  Therefore, the ALJ properly considered PMHNP Lee's opinions in accordance with applicable regulations, and substantial evidence supports the ALJ's conclusions.

### 3.  Dr. Hatfield's Opinion and the ALJ's Assessment

On December 21, 2021, Dr. Hatfield examined Plaintiff and completed a psychological consultative evaluation.  (R. at 1868-74.)  Dr. Hatfield acknowledged Plaintiff's history of traumatic brain injury, anxiety, and depression.  (R. at 1869.)  At the examination, Dr. Hatfield observed that Plaintiff "appeared anxious" but otherwise answered questions appropriately and showed no signs of psychomotor deficiencies or hostile or antisocial behavior.  (R. at 1868.) Plaintiff reported, among other things, his "super high anxiety," extreme irritability, inability to work with coworkers, issues maintaining employment due to his mental impairments, "grotesque" nightmares, paranoia, panic attacks, and "trouble meeting new people."  (R. at 1869.)  Plaintiff further described his recurring periods of depression, difficulty concentrating, and "short term semantic and episodic memory loss."  (R. at 1870.)

In his evaluation, Dr. Hatfield opined Plaintiff would "likely have moderate marked difficulties utilizing sustained attention to perform routine, repetitive tasks," and significant difficulties forming and maintaining effective relationships with co-workers, supervisors, and the general public and tolerating the stress of a competitive workplace, including changes in routine. (R. at 1873.)  However, Dr. Hatfield also found Plaintiff capable of asking for assistance and

No. 2:16-cv-3564-MGB, 2018 WL 10399991, at *5 n.6 (D.S.C. Feb. 22, 2018), *aff'd sub nom.*, 736 F. App'x. 419 (4th Cir. 2018) ("Courts have recognized the 'limited probative value' of such brief check-the-box forms, especially where (as here) they lack specific explanatory notes.").

"generally capable of understanding, retaining, and following simple, concrete instructions without difficulty." (R. at 1873.) Dr. Hatfield concluded that Plaintiff functioned in the overall average range of intellectual ability. (R. at 1873.) Lastly, Dr. Hatfield listed Plaintiff's diagnostic impressions as chronic PTSD with dissociative features, unspecified depressive disorder, generalized anxiety disorder with panic attacks, and mild neurocognitive disorder due to traumatic brain injury. (R. at 1873.)

After summarizing Dr. Hatfield's opinion, the ALJ found it "not persuasive." (R. at 32.) The ALJ found Dr. Hatfield's opinion internally inconsistent with the narrative of his findings from his examination. (R. at 32.) For example, while Dr. Hatfield noted that Plaintiff was anxious during the examination, his "other findings were unremarkable." (R. at 32.) Dr. Hatfield found Plaintiff "generally capable of understanding, retaining, and following simple, concrete instructions without difficulty" but had "moderate marked difficulties utilizing sustained attention to perform routine, repetitive tasks." (R. at 1873.) The ALJ found these limitations were contradicted by Dr. Hatfield's other findings that "d[id] not indicate such intense mood abnormalities that the [Plaintiff] would have difficulty concentrating on routine, repetitive tasks." (R. at 32.) Indeed, Dr. Hatfield noted Plaintiff had linear and persistent thought process and logical, coherent, and goal directed thought content. (R. at 1871.) Based on this evidence, the ALJ properly considered Dr. Hatfield's supporting explanations and adequately explained why he found portions of his opinion internally inconsistent with those explanations. (R. at 32.)

Regarding consistency, the ALJ noted that while treatment records indicated some mood abnormalities, they did not reflect concentration or thought abnormalities or mood abnormalities of such intensity that Plaintiff "would have difficulty concentrating on routine, repetitive tasks." (R. at 32.) The record also did "not show significant behavior abnormalities or generally show

panic issues." (R. at 32.) This constitutes substantial evidence supporting the ALJ's conclusion that Dr. Hatfield's opinions were inconsistent with the medical record.[11]

Plaintiff argues that Dr. Hatfield and PMHNP Lee's opinions are consistent with the state agency examiners' opinions that Plaintiff "should avoid direct contact with the general public." (Pl.'s Mem. at 14.) Specifically, Plaintiff complains that the ALJ found the state agency examiners' opinions "partially persuasive" but did not include the need to avoid direct contact with the general public in the RFC. (Pl.'s Mem. at 14.) However, similar to Dr. Hatfield and PMHNP Lee's opinions, the ALJ stated this limitation was not supported by the medical record and thus the state agency examiners' opinions were only "partially persuasive." (R. at 32-33.) Indeed, the ALJ expressly found that Plaintiff "would be able to occasionally interact with the public," contrary to their opinions. (R. at 33.)

Ultimately, the ALJ appropriately articulated and considered the supportability and consistency of Dr. Hatfield and PMHNP Lee's medical opinions and found their opinions not persuasive. While acknowledging Plaintiff's statements that he had difficulty following verbal and multi-step instructions and had lost a bank job due to a math mistake, the ALJ reasonably found that Plaintiff's ability to travel, complete backpacking trips, provide financial counseling, and follow news and stocks indicated an ability to perform at least simple, routine tasks and short, simple instructions. (R. at 21.) Therefore, the RFC limited Plaintiff to simple, routine tasks; short, simple instructions; and a work environment with routine changes and situations. (R. at 22.)

---

[11] Plaintiff argues that Dr. Hatfield's and PMHNP Lee's opinions are consistent with each other. (Pl.'s Mem. at 14.) This argument fails for two reasons. First, any consistency between the two does not undermine the remaining substantial record evidence which the ALJ found inconsistent with these opinions. (R. at 32.) Second, the ALJ determined that PMHNP Lee's own notes contradicted the extreme limitations he checked in his assessments. (R. at 32.) By the same token, they similarly do not support Dr. Hatfield's opinion.

Similarly, the ALJ limited Plaintiff to occasional interaction with others considering his testimony

that he struggled with criticism, experienced irritability when dealing with others, and had mood

issues.  (R. at 21.)  Based on the record, the ALJ fashioned an appropriate RFC.  Because the ALJ

applied correct legal standards and substantial evidence supports the ALJ's conclusions, the Court

finds no error.

## V.    CONCLUSION

For the reasons set forth above, the Court will DENY Plaintiff's Motion for Summary

Judgment (ECF No. 13), GRANT the Commissioner's Motion for Summary Judgment (ECF No.

17), and AFFIRM the final decision of the Commissioner.  An appropriate Order will accompany

this Memorandum Opinion.

/s/

Summer L. Speight
United States Magistrate Judge

Richmond, Virginia
Date: March 27, 2025